## A. JOHNSON & CO., INC.

### v.

### UNITED STATES.

### C.D. 4737; Court Nos. 70/19276, etc.

United States Customs Court.

March 10, 1978.

Busby Rivkin, Sherman, Levy & Rehm, New York City (Joseph S. Kaplan, New York City, of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Andrew P. Vance, Chief, Customs Section, and Joseph I. Liebman, New York City, trial attorney), for defendant.

RICHARDSON, Judge:

The merchandise in this case, described as Mairon Electrolytic Iron Cathode Plate or Mairon Electrolytic Iron Flake, was heretofore the subject of decision after trial in C.D. 4650 wherein this court held the merchandise to be classifiable as claimed under TSUS item 415.50 as modified by T.D. 68–9 as chemical elements in any physical form at the duty rate of 7 or 8 *per centum ad valorem,* depending upon date of entry, and not, as returned in the liquidation, under TSUS item 657.20 as modified by T.D. 68–9 as articles of iron not coated or plated with precious metal at the duty rate of 13 or 15 *per centum ad valorem,* depending upon date of entry. An alternative claim for classification of the merchandise under TSUS item 799.00 as modified by T.D. 68–9 as any article not provided for elsewhere in the schedules at the duty rate of 7 or 8 *per centum ad valorem,* depending upon date of entry, was not reached by the court in view of its disposition of the primary claim.

On appeal the Court of Customs and Patent Appeals *reversed* this court's determination with respect to the primary claim in C.A.D. 1196, holding that the merchandise was excluded from classification under Schedule 4 of the TSUS per force of Headnote 1(iii) of that schedule, and *remanded* the case to this court for a determination of the merits of any unadjudicated claimed classification.

Inasmuch as the appellate remand was for *determination* of the unadjudicated claim rather than for *further proceedings* in the case this court is disposing of the alternative claim on the basis of the existing record which the court regards as being sufficient for such purposes, as did apparently the Court of Customs and Patent Appeals.

The court is not disposed toward entering a judgment on the existing record "in favor of the defendant" as sought by the defendant, among other things, in its communication to the court and the opposing party by letter dated December 28, 1977. While it is true as defendant states that the appellate court ruled that the original classification under item 657.20 remained presumptively correct in the light of that court's holding, this presumption must, in the court's opinion, be measured against the unadjudicated claim under item 799.00. The appellate

court did not order that the original classification "should be reinstated" as defendant states. On the contrary, the appellate court remanded the case to this court for additional adjudication with respect to any "unadjudicated claimed classification".

In C.D. 4650 this court rejected classification of the imported merchandise under item 657.20 because the imported iron fragments are not *articles of iron* as they of necessity would have to be in order to be classifiable in Part 3 of Schedule 6 of the TSUS. The court found the merchandise to be iron in a primary form although not provided for in that particular form in Part 2 of Schedule 6 of the TSUS. In this court's view neither of these findings was disturbed by the holding of our appellate court in C.A.D. 1196. In this connection our appellate court simply said:

> Assuming, arguendo, that the Customs Court was correct in finding that Mairon is not an "article of iron," as that term is used in Schedule 6, Part 3, and that iron in flake form does not fall within any of the statutory descriptions in Schedule 6, Part 2, we are of the opinion that the Customs Court erred in its application of Headnote 1(iii).

And Headnote 1(iii) only deals with exclusions from classification under Schedule 4 of the TSUS—the chemicals schedule.

The court continues to believe in the soundness of its previous findings in C.D. 4650 concerning the primary nature of the imported iron fragments. Moreover, if Congress had intended to deal specifically with electrolytic iron in the TSUS there is persuasive evidence in the legislative history of the TSUS of Congress' awareness (1) of the commercial existence of electrolytic iron, and (2) of the treatment of that material as a primary form of metal under a tariff classification system said to have been relied upon by the framers of the TSUS in the "arrangement of the proposed revised schedules".* See *Explanatory Notes to the Brussels Nomenclature* (1955), page 662, where, under the heading 73.06 dealing, among other things, with blocks, lumps and similar forms of iron or steel, it is stated, "This includes electrolytic iron produced in any form and broken into pieces and imported as such"; and compare this with the definition of *"unwrought"* contained in Headnote 3(a) of Part 2 of Schedule 6 of the TSUS wherein that term is defined as "the term *'unwrought'* refers to metal, whether or not refined, in the form of . . . blocks, lumps . . . and similar primary forms . . .".

Thus, since the iron fragments at bar are unquestionably a primary form of iron which does not respond to the tariff concept of *articles of iron,* and cannot, under the law of this case, be classified under the chemicals schedule, it follows that this merchandise is classifiable as alternatively claimed by the plaintiff under the residual provision in item 799.00 for articles not provided for elsewhere in these schedules, and the court so holds.

Judgment will be entered herein accordingly.

* *Tariff Classification Study* (1960), *Submitting Report,* page 8.